## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

CITIZENS BANK, N.A.,
   Plaintiff,

  vs.

LOCAL MORTGAGE, INC.,
   Defendant.

Civil Action No. 1:24-cv-157

## COMPLAINT

Plaintiff Citizens Bank, N.A. ("Citizens"), as and for its Complaint against Defendant Local Mortgage, Inc. ("Local Mortgage") alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Citizens is a national banking association organized and existing under the National Bank Act, with its headquarters located in Providence, Rhode Island.

2. Local Mortgage is a foreign corporation organized under the laws of the State of Tennessee with a principal office located in Memphis, Tennessee.

3. For purposes of jurisdiction under 28 U.S.C. § 1332(a)(1), a national banking association is a citizen of the state in which it is headquartered.

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because this action presents an actual and existing case and/or controversy existing between citizens of different states, and because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5. This Court also has jurisdiction over this case because Local Mortgage consented to submit to the jurisdiction of any of the courts within the State of Rhode Island pursuant to a valid and enforceable forum selection clause.

6.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

7.      Venue is also appropriate in this Court because Local Mortgage agreed to litigate claims arising out of the Correspondent Loan Purchase Agreement at issue in this case in a court in the State of Rhode Island pursuant to a valid and enforceable forum selection clause.

## BACKGROUND FACTS

### *OVERVIEW OF THE CORRESPONDENT LENDING PROCESS*

8.      Citizens is in the business of purchasing closed residential mortgage loans from approved lenders, known as "correspondent" lenders, and reselling those loans to the Federal Home Loan Mortgage Corporation ("FHLMC," colloquially referred to as "Freddie Mac"), the Federal National Mortgage Association ("FNMA," colloquially referred to as "Fannie Mae"), and other investors in the secondary mortgage market.  Citizens will retain the servicing rights over the loan after reselling it to FHLMC, FNMA, or another similar investor.

9.      In order to sell a mortgage loan to FHLMC, FNMA, or another similar investor, the loan must meet stringent requirements that are set forth in various agreements, manuals, and other documentation.

10.     Secondary investors like FNMA, however, sometimes unknowingly purchase mortgage loans that were not actually eligible to be purchased.  If a secondary investor like FNMA subsequently discovers that it purchased an ineligible mortgage loan, it will require the seller to repurchase the loan.  In turn, the seller will often require the correspondent lender to repurchase the loan from the seller.  These repurchase obligations are set forth in the underlying agreements to purchase mortgage loans.

*THE CLPA*

11.     Local Mortgage is engaged in the business of banking and mortgage lending, which includes, *inter alia*, the origination, funding, and sale of residential mortgage loans.

12.     On or about July 1, 2019, Citizens and Local Mortgage entered into a Correspondent Loan Purchase Agreement ("CLPA"), pursuant to which Local Mortgage agreed to offer to sell certain Mortgage Loans (defined in Section 1 of the CLPA) and related servicing rights to Citizens for resale on the secondary market to FHLMC, FNMA, and other similar investors.  A true and accurate copy of the CLPA is attached as **Exhibit A**.

**The Mortgage Loan Repurchase Provisions**

13.     Specifically, Local Mortgage offered to sell Citizens Mortgage Loans that, *inter alia*, were "originated, delivered and serviced in accordance with [FNMA] Guides, the [Citizens] Manual, Applicable Requirements [as defined in Section 1 of the CLPA], and any additional [FNMA] and [Citizens] conditions."  Ex. A § 2.

14.     Local Mortgage and Citizens agreed that each Mortgage Loan would be purchased and sold "subject to the terms and conditions of [the CLPA], the [Citizens] Manual, and any other Contract Documents [defined in Section 1 of the CLPA]."  Ex. A § 3.

15.     For each Mortgage Loan that Local Mortgage sold to Citizens, Local Mortgage made certain representations and warranties in Section 6 of the CLPA, including, *inter alia*:

    a.  "There is no fact or circumstance with respect to the Mortgage Loan that would entitle . . . [FNMA] to demand repurchase of a Mortgage Loan";

    b.  The "Mortgage Loan complies with [FNMA's] Guide";

    c.   The "Mortgage Loan was originated and serviced in compliance with [FNMA's] Guide, the [Citizens] Manual and applicable law . . ."; and

3

   d.  "No Mortgage has been originated through any type of fraud or deceit."

Ex. A §§ 6.2, 6.5, 6.19.

16.     Under Section 6 of the CLPA, Citizens' rights and remedies with respect to Local Mortgage's breach of any representation and warranty in the CLPA survive the purchase and delivery of the subject Mortgage Loan.  Ex. A § 6.

17.     Pursuant to Section 8 of the CLPA, in the event that FHLMC, FNMA, or other similar investor requires Citizens to repurchase a Mortgage Loan that Local Mortgage had sold to Citizens, Local Mortgage agrees to repurchase the loan from Citizens if, *inter alia*:

   a.  "Any representation or warranty of [Local Mortgage] with respect to the Mortgage Loan is determined by [Citizens] to have been false or any other Event of Default with respect to the Mortgage Loan shall have occurred";

   b.  [Citizens] is required to repurchase the Mortgage Loan after it has been sold to [FNMA] . . . due to a deficiency in or omission with respect to any documents, instrument, or agreement pertaining to the Mortgage Loan or because of any other default which existed on or before purchase of the Mortgage Loan by [Citizens] or which arouse after purchase as a result of an occurrence or omission o or before the purchase";

   c.  "A post-closing quality control review by . . . [FNMA] . . . discloses any fraud or misrepresentation."

Ex. A §§ 8(a), 8(b), 8(f).

18.     Within 30 days after Citizens demands repurchase of a Mortgage Loan under Section 8, Local Mortgage must repurchase the Loan at the Repurchase Price (as defined in Section 1 of the CLPA), which includes, *inter alia*, the outstanding principal balance, interest

thereon, advances for escrow accounts, foreclosure costs, reasonable attorneys' fees, and costs incurred by Citizens in connection with the Mortgage Loan.  Ex. A §§ 1, 8.

19.    Pursuant to Section 10 of the CLPA, "[i]n addition to [Local Mortgage's] repurchase obligation," Local Mortgage also agrees to indemnify Citizens and hold Citizens harmless from and against, *inter alia*, "any and all losses, liabilities, penalties, damages, or other harm or injury" that Citizens incurs, "including reasonable attorneys' fees and court costs arising out of":

   a.   "Any misrepresentation made by [Local Mortgage] in [the CLPA] or any information provided to [Citizens],"

   b.   "Any breach by [Local Mortgage] of any of [Local Mortgage's] representations, warranties, or obligations under [the CLPA] or any of the Contract Documents, and/or"

   c.   "Any act, or failure to act or perform any term, or obligation of [Local Mortgage] under [the CLPA] or any of the Contract Documents,"

   d.   "Any failure of [Local Mortgage] to comply with any Applicable Requirement" [as defined in Section 1 of the CLPA]."

Ex. A §§ 10(a)-(d).

20.    In addition to the indemnification obligation in Section 10 of the CLPA, Local Mortgage agreed in Section 21 that if it breaches or fails to perform under the CLPA, it "shall pay all costs and expenses, including court costs and reasonable attorneys' fees incurred" by Citizens.  Ex. A § 22.

### *THE SINANAN LOAN*

21.     Local Mortgage originated a Mortgage Loan to Richie Sinanan (the "Sinanan Loan") and took a security interest in Sinanan's real property located at 40 Oak Grove Drive, Byhalia, MS 38611 (the "Property").

22.     Local Mortgage sold the Sinanan Loan to Citizens pursuant to the CLPA and subject to the representations and warranties contained in the CLPA, which unbeknownst to Citizens at the time, were falsely made.

23.     After Citizens purchased the Sinanan Loan from Local Mortgage, Citizens sold the Sinanan Loan to FNMA, but retained the servicing rights on the Sinanan Loan.

24.     After Citizens sold the Sinanan Loan, FNMA performed a post-purchase audit, which revealed the following deficiencies:

    a.  Inappropriate comparable sale selection in violation of FNMA's Guide because one comparable sale relied upon was 17 months old and should not have been used when more recent sales representing a more accurate value were available;

    b.  Inappropriate comparable sale selection due to location in violation of FNMA's Guide because one comparable sale relied upon was 14.60 miles away from the Property in a different town when similar sales were available in the Property's immediate neighborhood;

    c.  Use of dissimilar comparable sale due to site characteristics in violation of FNMA's Guide because one comparable sale relied upon had a significantly different site than the Property (20 acres versus the Property's 1.50-acre site) when sales with similar site size were available;

d. Use of physically dissimilar comparable sale due to age because one comparable sale relied upon was superior to the Property in age (new construction compared to the Property, which was 25 years old) when sales data for property sales similarly aged to the Property were available; and

e. Use of physically dissimilar comparable sale due to gross living area in violation of FNMA's Guide because one comparable sale relied upon was superior to the Property in gross living space (4,714 square feet compared to the Property's 2,931 square feet).

25. FNMA demanded that Citizens repurchase the Sinanan Loan from FNMA based on the deficiencies identified in its post-purchase audit.

26. Citizens repurchased the Sinanan Loan from FNMA.

27. Prior to FNMA's audit, Citizens had no reason to suspect that Local Mortgage's representations and warranties regarding the Sinanan Loan were false.

28. Citizens issued a formal demand for repurchase of the Sinanan Loan to Local Mortgage in accordance with the CLPA.

29. Local Mortgage, however, refused to repurchase the Sinanan Loan, in breach of its obligations under the CLPA.

30. Local Mortgage has represented to Citizens that it has no intention to repurchase the Sinanan Loan.

31. As of April 10, 2024, the Repurchase Price for the Sinanan Loan is $527,298.78, exclusive of Citizens costs and attorneys' fees in bringing this action.

7

**COUNT I – BREACH OF CONTRACT**

32.    Citizens repeats and realleges the allegations set forth in Paragraphs 1 through 31 as if fully set forth herein.

33.    The CLPA constitutes a valid and enforceable contract supported by valuable consideration in the form of promises and obligations mutually exchanged and imposed.

34.    Citizens and Local Mortgage are bound by the terms of the CLPA.

35.    Local Mortgage breached the representations and warranties in the CLPA when it sold the Sinanan Loan to Citizens, including, *inter alia*, by falsely representing and warranting that no fact or circumstance regarding the Sinanan Loan would entitle FNMA to demand that Citizens repurchase the Loan, the Sinanan Loan complies with FNMA's Guide and was originated and serviced in compliance with that Guide, and the Sinanan Loan was not originated through fraud or deceit.

36.    As a result of Local Mortgage's breach of representations and warranties, FNMA required Citizens to repurchase—and Citizens did indeed repurchase—the Sinanan Loan.

37.    Local Mortgage breached the CLPA by failing to repurchase the Sinanan Loan from Citizens upon Citizens' written demand.

38.    Local Mortgage has represented to Citizens that it has no intention to repurchase the Sinanan Loan, which constitutes an anticipatory repudiation of its representations and warranties in the CLPA.

39.    As a result of Local Mortgage's breach of its representations, warranties, and repurchase obligation under the CLPA, Citizens has suffered, and continues to suffer, damages in an amount to be determined at trial, but in an amount not less than the Repurchase Price at the time of trial, plus costs and attorneys' fees.

## COUNT II – CONTRACTUAL INDEMNIFICATION, COSTS, EXPENSES, AND ATTORNEYS' FEES

40.     Citizens repeats and realleges the allegations set forth in Paragraphs 1 through 39 as if fully set forth herein.

41.     The CLPA constitutes a valid and enforceable contract supported by valuable consideration in the form of promises and obligations mutually exchanged and imposed.

42.     Citizens and Local Mortgage are bound by the terms of the CLPA.

43.     Section 10 of the CLPA obligates Local Mortgage to indemnify Citizens and hold Citizens harmless against all losses, liabilities, penalties, damages, or other harm or injury, including costs and reasonable attorneys' fees, arising out of, *inter alia*, Local Mortgage's misrepresentations relating to the Sinanan Loan and Local Mortgage's breach of its representations, warranties, and repurchase obligation under the CLPA, Section 21 obligates and Local Mortgage to pay Citizens' costs, expenses, and attorneys' fees in the event that Local Mortgage breaches the CLPA.

44.     Local Mortgage breached its indemnity obligations under Section 10 of the CLPA when it made false representations and warranties with respect to its sale of the Sinanan Loan and refused to repurchase such Loan (each of which constitute additional breaches of the CLPA).

45.     Local Mortgage has represented to Citizens that it has no intention to repurchase the Sinanan Loan, which constitutes an anticipatory repudiation of its representations and warranties in the CLPA.

46.     As a result of Local Mortgage's breaches, Citizens has incurred and continues to incur costs, attorneys' fees, and expenses in connection with the Sinanan Loan and this lawsuit, in an amount to be proven at trial, for which Local Mortgage is obligated to reimburse Citizens under Sections 10 and/or Section 21 of the CLPA.

## PRAYER FOR RELIEF

**WHEREFORE**, Citizens demands judgment in its favor and against Local Mortgage as follows:

1.      Awarding to Citizens all damages arising from and relating to Local Mortgage's breach of contract, in an amount to be determined at trial, but not less than the Repurchase Price of the Sinanan Loan at the time of trial;

2.      Awarding to Citizens all recoverable pre- and post-judgment interest at the maximum rate allowed by law;

3.      Awarding to Citizens all attorneys' fees and costs incurred in bringing this action as expressly provided in the CLPA;

4.      Requiring Local Mortgage to indemnify Citizens in and against any and all losses, liabilities, penalties, damages, any other harm that has occurred, inclusive of attorneys' fees and court costs, arising out of Local Mortgage's breach of the CLPA; and

5.      For such other and further relief that the Court deems fair, just, and equitable.


Dated: April 19, 2024

                                                 Respectfully submitted,
                                                 Plaintiff,
                                                 CITIZENS BANK, N.A.
                                                 By its attorneys,

                                                 /s/ *Geoffrey W. Millsom*
                                                 Geoffrey W. Millsom (#6483)
                                                 Christopher J. Yagoobian (#10122)
                                                 Adler Pollock & Sheehan P.C.
                                                 One Citizens Plaza, 8th Floor
                                                 Providence, RI 02903
                                                 Tel: 401-427-6147
                                                 Fax: 401-351-4607
                                                 gmillsom@apslaw.com
                                                 cyagoobian@apslaw.com